This is number 24-2968 Novartis Pharmaceuticals Corporation against the Secretary. Counsel. Thank you, Your Honor. May it please the Court, Samir Deghasan for Novartis. I'd like to reserve four minutes of my time for rebuttal. Granted. I plan to spend the bulk of my time today on the excessive fines claim because that's the claim unique to our case and we think the district court's decision was seriously flawed and if adopted by this I think would have very far-reaching consequences but I do want to just spend a few minutes talking about the other claims. Two issues that actually were mentioned in the previous argument. One is I'd like to just talk quickly about how our takings argument is a little bit different from the one that this court heard in BMS Janssen and how we think it gives the court a more straightforward path to finding a constitutional violation and I'd like to quickly talk about First Amendment remedy. So on the takings issue we think that this case is resolved by a key principle the Supreme Court articulated in Horn which is that the parties submit to a physical taking as a condition of being able to sell their product in interstate commerce and in trying to distinguish Horn the government you know time and again relies on this false premise which is that the government is the direct purchaser of the drugs but just like in Horn this case involves purely private transactions between a seller and a purchaser in a market that the government has chosen to regulate and subsidize. Manufacturers sell their drugs to wholesalers at commercial prices. The wholesalers then sell them to pharmacies who distribute them to individuals over 65. Those over 65s contract with private entities in the form of Part D plans who insure them for the cost of their drugs and then and only then does the government come into play by subsidizing the Part D plans in order to lower the cost. In Horn there was a physical taking of the raisins. Where's the physical taking here? The physical taking is the access provision in the statute so that and it is just as much a physical compulsion. Access isn't physical possession. It is, it is absolutely. If you combine the access provision which says that we have to give access to the maximum fair price which means. It's access to a price not to a product. Oh I mean it certainly means access to the product because if you have to access a price then you have to obviously give access to the underlying product. If you choose to enter the agreement you don't have to the agreement. The only the only reason you quote have to enter the agreement is the the back end compulsion about about the penalties right. It causes downstream consequences if you don't enter the agreement right. Well we in exactly the same way that the that the grape manufacturers had to give up their raisins because there would be a penalty a fine there would be a fine. Just to pick up on what Judge Hardiman said I don't think it is the exact same way. In in Horn if you were selling raisins the government got a cut. It didn't matter who you sold them to. They always walked out with a cut and they and it was a physical cut. In this case you can sell your drugs however you want. It's only by electing to participate in the Medicare and Medicaid reimbursement programs that the government now can can say what it wants. So there's there's an extra step here. This isn't Horn. If you never want to be part of the programs the government never gets a cut. You can sell your products all you want. But that's what the government was saying in Horn. That's the exact argument they made. They said if you don't want if you're a grape farmer. It's not don't sell. It was don't sell in a program and I think there's a difference. I agree with Horn. The answer can't be just don't sell your products and then we won't take a cut. But the but in this case it's just don't sell your products in our program and we won't take a cut. Isn't that a difference? That's what they were saying in Horn. The program was government's regulation of the raisin market. I mean this is how Justice Sotomayor describes it in her dissent. In so far as the Horns wish to sell some raisins in a market regulated by the government. That's the raisin market. And at a price supported by governmental intervention. Remember the government was saying that we're really helping you out. Without us the price of raisins are going to crater. It's going to be a total disaster. So we're doing you a favor. The order this is the rest of the quote. The order requires they give up the right to sell a portion of those raisins. Sell a portion of raisins at the price at that price and instead accept disposal of them at a lower price. I don't think they could opt out in Horn of the marketing order. I don't think that was an opt out. But they could opt out. They were great. They are grape farmers. They're people who farm grapes. And the government said of course you can opt out of the government regulated component here. Because what you can do is instead of selling your grapes to the federally regulated market as raisins. You can sell your grapes instead to wine manufacturers. And the only reason you don't do that is because we're giving you such a great deal on the raisin side. We're supporting this raisin market. And without us the raisin market would crater. And we're giving you a good deal. And that's why you're selling your grapes as raisins. But if you don't like it you can opt out and you can sell your grapes to the wine people. That's exactly the same area here where we want to sell to over 65s. The government says we regulate the market for sales to over 65s. And we do a great job. We help you out so much. If you don't like it though don't sell to over 65s. Was the government in Horn buying the raisins and distributing them to senior citizens. I don't I honestly don't think the analysis changes. If you think of one. Again I'll take that as a no. Well but they were taking the raisins. Was the government taking the raisins and selling them. Yes. And selling them to senior citizens. Well not to senior citizens but they were selling the raisins and then they were there was the farmers retained a contingent interest and they're being paid back money as a to me it's a totally different context. Here you have a government as a market participant. The government is not only a market participant. The government is dominating the market. Everybody's briefs say that approximately 50 percent of the spending in this area is is comes from the federal government. Correct. Correct. So if the government is the is the big purchaser and the big spender here one would expect the government to negotiate the same sort of extraordinary extraordinarily narrow margins that other dominant market participants in the private sector extract. Anybody who does business with big companies like Amazon Apple Walmart the margins are razor thin. Right. I agree with all that. OK. So here the government could extract razor thin margins on the massive quantities of pharmaceuticals the government is buying and all it has to do is the Congress the United States needs to pass a law putting into legal effect those razor thin margins. Problem solved. Correct. I think that's what I started with the idea the government is not a purchaser in this market. The government is regulating third party transactions. We're trying to sell the government spending the money. The government's not buying the drugs directly. There are intermediaries here but the government's a purchaser that the government is spending the money like the government be spending the money in a low income housing program would be spending the money in a food voucher program that all regulatory programs the government spends money the back end. But this is not the government in this case tries to portray this as this is like the D.O.D. you know we're just buying it as a purchaser. Horn would come out differently I think if the government was the only purchaser of raisins but it wasn't it was a regulator. And this is exactly the same kind of regulation. And that's why I started with that. Once you look at that you know the analogy I think it does. It is very similar. I'll move on to the first moment because I don't have much time but but I will just add one thing just because you mentioned that 30 day requirement. We do think that that is contrary to the statute the idea that they could withdraw within 30 days. And I'll note one other thing about that which is that if if you know if we were not able to withdraw in 30 days then we would have to sign the agreement. And then if you look at Section 13 20 F 6 A that says any manufacturer of a selected drug that's entered into an agreement under Section 13 20 F 2 of this title. So once I've entered into an agreement that does not provide access to a price that's equal or less than the maximum fair price shall be subject to civil monetary penalties. So we couldn't get out because of 30 days and then we would then be subject to the civil monetary penalties even if we withdrew from Medicare and Medicaid. The reason you can't get out within 30 days is because the statute says it's 11 to 23 months. Exactly and so and we would be Congress gives gives an agency the discretion and and like and uses a term like good cause and allows the secretary to determine what good cause is. How is it possible to say what the secretary has determined is is unreasonable and contrary? I think you can't read the statute in a way where good cause duplicates something else the statute provides for us. The statute provides for the manufacturers to withdraw. I don't think you can read the statute failure saying and the agency can say good cause is the manufacturers wants to withdraw on a different timetable to a timetable the statute already provides for the manufacturer which to withdraw. So I think that seems perfectly reasonable and and other circumstances you might say well normally you know you're gonna we're gonna require a timetable to be a certain thing but in you know if somebody shows good cause we're gonna we're gonna let them get away with less time. I mean what's unreasonable about that? But I think the good cause can't just be that they would like to withdraw because the statute already provides for a framework for when they would like to withdraw and puts and puts a timeline for that and so then it can't be that that is duplicated by the government being able to say the good cause is just the desire to withdraw. But the desire to withdraw it's the desire to not pay the excise tax it's the I mean so I mean you can you could come up with a whole list of reasons it's because the the secretary likes your clients you know I mean so if that's good cause and the secretary says so then then you know I mean what is the limiting principle on on good cause? I think it just it can't be something that violates the structure of how the statute is designed. I mean you sort of have our argument this if the statute is designed such that there's another provision of the gateway here then good cause can't be read. It seems like a good cause is an exception is is set up as an exception to to the the standard principle. Right um so just to move on to the First Amendment remedy uh very quickly because I know that also kept in the previous argument. I'm sorry um do you want to address the Eighth Amendment first or after the First Amendment? After the First Amendment I'll just say two very quick things on the First Amendment uh one is it's I think it's important to see the First Amendment violation here is not just the use of these specific words but these words in the context of a sham negotiation performed in negotiations. What the statute compels us you know it says the government has to make an offer we have to make them a counter offer we have to agree that what what it's only a sham negotiation if you have to reach an agreement and that gets back to the exit issue right. I mean if it can't be a sham a negotiation because the government has too much bargaining power right. I mean then then every single defense contract would be a sham negotiation. I mean it's oh it's like saying that the one one party has superior bargaining power it's not a real negotiation. Well in a commonsensical way it's not because the party with superior bargaining power gets to dictate the terms but in a legal sense it's not a sham. I agree with all that but the the the bargaining power can't be the exercise of cohesive sovereign power. I mean this is how we phrase it and not complain uh this is a JA-52. The negotiation claimed by the program is not really a negotiation. Unlike in a genuine negotiation manufacturers are compelled to participate, compelled to provide any information including proprietary and highly confidential information that their counterparty demands, compelled to base any counter off on a limited number of factors unilaterally designated by the counterparty and ultimately compelled to accept whatever offer the counterparty settles on or face intentionally ruinous penalties at every step. So that's not a negotiation in any way for reasons totally independent of the fact that the government is a powerful actor that's just a lot of aspects of this that just are not negotiations. But the ruinous penalties do a lot of work. Absolutely absolutely. Because I mean look there are a lot of doctors and hospitals and other medical providers that that say I have to do business with Medicare and Medicaid right but there are other groups of doctors and medical professionals that say you know what the government made it so disadvantageous I'm not going to take Medicaid patients I'm not going to take Medicare patients. That's a reality is it not? That's all a reality. And you could do the same thing here you could choose to not sell and tresto to the federal government. The problem is if you choose not to do that there are all kinds of other downstream consequences like you're you're out of business. That's your argument. The problem for the first amendment is completely separate which is that they as part of this process completely separate from that they made us engage in a sham negotiation that is not a negotiation because there are all these provisions that force us to basically accept what the other side of the negotiation is doing. But that's only because of the exit penalty. Without the exit penalty you can walk the deal. You could make the same decision that those medical providers who have made the decision I'm not dealing with the federal government it's two owners you could make that decision. Yeah it's because the penalty it's because of the compelled information that we have to provide there's lots of elements of this that say you have to do certain things that you would never do in a normal well isn't it true though that people doing business with the defense department have all kinds of onerous reporting requirements about the munitions and other things that they're selling in the defense department and and the the complaint can't be oh they're making it very difficult for me to sell missiles and airplanes to the federal government that can't be the argument. If you don't if you don't like all the detailed reporting requirements and maybe even sharing some of your proprietary information then you don't do business with the government. Sure your honor but even if you just think it is the 93.1 billion dollar penalty at the end of the day that's not a negotiation because we have to accept it so and for the purpose of the first amendment the point I was trying to make was if you think of all of that as being the first amendment violation as well as just the MFP it's not just the words MFP it's that the statute makes us do all of that in order to reach an MFP something the statute calls the MFP and I think you phrased it really well Judge Hahnemann people can connect the dots so they look at all of that and they say oh well what all of that means together is and and is that they reach the MFP and that is the maximum fair price that is the thing which means that the other prices are not fair that the previous prices were not fair so all of that is is compelled speech is a message that we have to convey. You know in terms of the breadth of the message uh not to reference the prior oral argument but but the point was it's all private and so I I thought I heard counsel for the government say these agreements don't have to be made public and so in terms of the breadth of the message aren't you in total control of that? But this but as Judge Hahnemann said you know the statute is public and and the performance in the negotiation everyone knows. But I know but breadth of the no we're because you you enter the agreement and you can determine who gets it. It does not give you control over breadth of message because the message that's being conveyed to the public is these manufacturers engage in negotiation and they agreed to a maximum fair price and we've been forced to perform the negotiation and then forced to sign an agreement everyone knows we sign an agreement for something called a maximum fair price everyone knows at the end of the day what that maximum fair price is so all of that is compelled speech that creates a message and the reason congress wanted to do that is because price caps are very unpopular they didn't want to do it this other way involving price caps so what they did is they performed you know it's called the drug price negotiation. So if I understand your point it would be even without the contract even if the contract was under seal and no one could ever see it just illegal to show the contract to anyone you would still have a first amendment challenge? I I think we would your honor because what the statute does is it compels the performance of negotiation and it compels us to still have signed something called an MFP and everyone knows that we've signed an MFP and agreed to it everyone knows what that price is at the end of the day so all the things that are conveyed to the public are going to be exactly the same. Blur speech and action don't you think a little bit of a blurring of speech and action on that one? Just like in Barnett just like in Pappet like the cases which involve you know saluting the flag at the same time as saying the pledge of allegiance you kind have a union of speech and conduct but the key thing is that overall you create an expressive message and the point on remedy I was trying to make is that the statute without that is a different statute. Congress wanted to present to the world a statute involving negotiations if you take all of that out it's not clear that Congress would have passed the same statute. I would just like to so so just just just hit me on remedy again what what's what remedy do you propose just void everything or void maximum fair price is used in the statute not just the I think you have to avoid everything because the issue is what is is this if you if you if you void the the the component of the of the statute so this is the manufacturer agreement component of the statute and it says this is what we have to do as a matter of the statute the secretary and the manufacturers have to negotiate to determine the maximum fair price and they have to agree to the maximum fair price so those are things the statute compels us to do and so if and if you void that part of the statute the statute doesn't work anymore because this because the agreement is the thing which triggers the penalties is the thing which triggers the I mean is there a compelled speech case that's ever done that before Janice didn't do that they just they just voided agency fees Wooley didn't do that it just got rid of live free or die no one's no one's ripped this entire statute out of the code book before based on a compelled speech point have they uh I mean I think that there isn't a statute where compelled speech is at the heart of the program in exactly this way this the whole point of this I mean Janice Janice the agency fees you you read the briefs on that I'm sure and you saw how the union said you know the sky is falling it won't be the same labor relations in America will never be the same again without agency it's kind of close to where you're at right well but I think the question is the question is still one of legislative intent which is would congress have wanted a statute that basically looks like a price cap and doesn't look like a negotiation anymore and I think when passed the drug price negotiation program it wanted to convey to the public that this was the result of a negotiation um some of these I'm very happy to answer more questions on this I also you know as a as a result of some of this colloquy have not been able to get to my um eighth amendment argument it would be wonderful if I could have just two minutes to talk about the eighth amendment argument before um uh the rebuttal time so I'm just going to address I think the AIA because that's the grounds for the decision below um so the AIA was passed in in 1867 in direct response to suits to enjoin the collection of the nation's first income taxes as every single AIA precedent stresses the purpose of the AIA is quote to protect the federal government's ability to collect a consistent stream of revenue in over 150 years no government has ever tried to use the AIA in the way the government is here which is to deliberately set a penalty so high that it is not to then label it a tax and then to say well the only way you could ever challenge this is by going through a refund action that is by definition impossible because this is an unpayable penalty and if you think if you endorse that argument there is no limit to how the AIA can be abused to to shield unconstitutional um penalties luckily I think there are two pathways the court could choose around that one is the text of the AIA itself and the other is the Williams Packing Exception on the text of the AIA itself the AIA does not say that everything labeled the tax is uh is is is barred what it says is that no suit should be maintained for the purpose of restraining the assessment or collection of taxes and in CIC services there were three factors that the court supreme court looked to one is most importantly the relief requested the things sought to be enjoined if you look at our complaint at JA 86 paragraph 123 this is what we seek enjoined defendants from forcing Novartis to sign an initial manufacturer agreement which will agree to prices set by the program we do not seek an injunction against the tax we we have never sought an injunction against the tax we have sought an injunction paragraph 120 you ask the district court to declare that the program's excise tax violates the excessive fines clause correct and and I think the court could do that without an injunction but that would be subject to the declarative judgment act separate uh provision really uh involving um uh relating to a tax even if you think that that relief is barred that doesn't mean that the AIA bars the relief that we actually seek in our complaint which is not an injunction against the tax so that's the thing you know as the supreme court said the AIA kicks in when the target of a requested injunction is a tax obligation so the excessive fine is just the the outlandishly high penalty you have to pay the uh the you know a 93 it's a prohibitive penalty it's so prohibitive the government scored it as zero revenue it's it's not I mean even just on any common sense basis no one thinks that they are collecting 93 billion dollars for the act of not agree this is the act of just not agreeing of saying we don't want to negotiate we don't want to agree completely innocent conduct a 93 billion dollar penalty if you just step back it's so you know unbelievably exceptional in the history of of modern legislature to do something like that and that's the second factor I was going to point to which is if someone is several steps removed from the tax and stands nowhere near the cusp of tax liability those are the quotes from CIC we will never pay this tax and this tax would exist with or without you know that whether or not there's going to be a lawsuit or not that this tax was never ever going to be collected so how could our suit be for the purpose of restraining of collecting taxes if no tax was ever intended to be collected we understand your argument on that we'll hear you thank you thank you let's hear from uh miss potty good morning your honors and may it please the court katherine potty for the united states i'd like to start by picking up on the discussion about the eighth amendment claim and the anti injunction act this one is not a close call congress was very clear that this is a tax said over and over again that this is a tax and the supreme court has made clear that whether the anti-injunction act applies or not is a matter of statutory interpretation so the words congress uses that's the whole ball game here with respect to whether this is a suit that is directed toward the tax itself all you have to do is go to the page in the complaint uh that my friend directed to which says that in the prayer for relief the ask with respect to the eighth amendment claim is to declare that the excise tax violates the excessive fines clause if you go two pages up with respect on page 84 uh the uh that's where the part of the complaint addressing the excessive fines clause claim uh finishes and at the very end you see that the program's excise tax is therefore unconstitutional under the excessive fines clause of the eighth amendment so everything about the complaint is seeking relief seeking a declaration that the tax is unconstitutional and the supreme court has said over and over again that if on the face of the complaint the objective aim of the lawsuit is to seek relief against the tax itself then the anti-injunction act applies my friend talks about how what they really want or their true motivations are something different but the court said explicitly in cic services that courts are not to inquire into the subjective motive so their own feeling that they don't ever intend to pay the tax no matter what happens because down that path lies too much potential from circumventing for circumventing that's directly from cic services so i do also want to explain that in cic services the court distinguished between a claim that has the downstream effect of resulting in the lack of collection of attacks versus one that is targeted toward the tax itself we have an example of that in this very lawsuit we're not arguing that the eighth amendment or that the first amendment claim or the fifth amendment claim are barred by the anti-injunction act even though if those claims were successful it would have the downstream effect of resulting in no tax collection under the excise tax provision that's very well i'm not sure why that's true on the first amendment if if the remedy for the first if we were to find a first amendment violation and the remedy were to simply strike maximum fair price it's a sort of immaterial to the functioning of the program isn't it so in terms of the program's all about money right the program's about saving the taxpayer money it's about making the the medicare medicaid programs uh giving them some semblance of solvency um striking maximum fair price doesn't do anything to undermine those goals does it that's true with respect to the remedy the court has proposed and i would like to address that when we get to the first amendment section my point was just to use the other claim for example the fifth amendment claim then as an illustration of the difference between a claim that will have the downstream effect of restraining the collection of a tax as a result if the court found the program unconstitutional versus a claim that is directed toward the tax itself like this one which seeks a declaration that the tax is unconstitutional um i'm happy nfib says that we have to accord uh almost accept as as truth the congress's moniker that it's a tax that's right your honor and the reason for that is that the aia is a statute so this whole thing is a matter of statutory interpretation so the words congress uses that's the whole ball game if they call it a tax and they they could choose whether to apply the statute to other things but they chose to apply it to the things that they call taxes and this statute was enacted against that uh uh backdrop of understanding uh elaborated through decisions i'm happy to address the williams packing exception i think the key thing here is that it must be clear that under no circumstances could the government prevail there's uh nothing close to that sort of showing here and in um bob jones the court emphasized that williams packing what closed the door on some prior analysis that focused only on the extent of the harm and rather uh emphasized and said that the government has to have no chance of prevailing for the exception to kick in um and uh if there are no further questions on the tax questions i'm happy to move to i'd like to respond to some of the first amendment discussion that we were having earlier what about is there anything you want to say about standing on tax collection and kind of kind of who got sued and who didn't get sued more the latter yes your honor so um the i think it is clear that plaintiffs do not include the irs and treasury as defendants in the complaint i don't want to speculate too broadly as to why but the relevance of the anti-injunction act could be part of that strategic decision but here um the court in lujan and in bracken has made clear that the specific agency that is charged with enforcing the uh government action that is alleged to be unconstitutional has to be named as a defendant in the case uh and that whether it's an injunction or declaratory relief it must uh it only binds the particular agencies that are named in the defense as defendants and the irs and treasury were not named here can't they be joined i think at this stage your honor it would it is would be inappropriate to join the irs and treasury as defendants and that would not overcome the true barrier here which is the anti-injunction act bar and so it would not make a particular difference and again that was a potentially conscious choice on their part given the existence of the entire and so and so in terms of order of operations anti-injunction act is jurisdictional standing is jurisdictional so i guess kind of sounds strange to say but we don't address article three if we're if if if we reach the anti-injunction act the way that you you say is very clear flip side is if we disagree with you there we're off to standing uh that's right because they're both jurisdictional the court could address them in either order and the anti-injunction act here is very clear and it's not not a close call as we discussed earlier with respect to first amendment if there are no further questions on the eighth amendment uh claim i did want to address the court's proposal that there's an easy fix to the problem here i do understand that intuition but i want to be clear that uh it would be a big decision to hold that a uh private party's signature on a form government contract is speech implicating the first amendment uh this would court would be the first to hold such a thing and that would be an extraordinary expansion of first amendment laws are there any other statutes that say that the contracting party is agreeing to the maximum fair price none that use that freight flows if if this is the first time a statute's ever said that we shouldn't be surprised that this might be the first court to say that's problematic so i i do first the question is whether the signature on a form contract that again is never even made public but for the conduct of my friends and including that public agreement in this litigation to determine first whether that agreement is speech uh when they are not being asked to announce that to the world at all uh would itself i mean i think that initial question comes before the downstream question of uh of what the import of maximum fair price means i do want to acknowledge that there there could be theoretically terms in a contract that would support an inference that what was really going on here was that the government was trying to get the party to uh endorse a particular message for example if a contract included the pledge of allegiance i think that's obvious what's going on here and it's not a pledge of allegiance this is a commercial case but isn't it isn't it patently obvious that commercially what's going on here is the federal government is is uh hoping through this program to do a few things one is to reduce health care costs uh in the medicare and medicaid programs but also in light of the fact that these companies that are getting massive quantities of federal dollars through medicare and medicaid they're also operating in the private sector right and if if these companies uh have to represent that the prices that are substantially lower than the prices they were previously charging are the maximum fair prices that should have a very depressive uh price effect on the on the private market as well would it not that's exactly the thing is they're not asked being asked to represent that they are being asked to sign a form government contract that uses statutory terms fair price is all over government contract it's in the federal acquisition regulations maximum is a word that is added here because it is literally true it is actually the maximum so fair price is everywhere the addition of the word maximum really does not transform this into something that is akin to the pledge of allegiance so i mean but but but i think like so so i'm back at woolly okay and i'm back at woolly v maynard and so you know they are one of the concerns was that the message live fear die was ideological and so you're basically asking people to carry out the state's message right now it's not just that it's our state motto but we want you to drive around with our state motto and show everyone our state motto and and here the government's message is that it's maximum fair price and you now say we want you in your contract to agree to our message maximum fair price and so it feels that that's a little bit similar in the sense that the government wants this message because this is a big important program and so they they don't want to you know the more that feels like a cram down you know the harder that is and so so now maybe the pharmaceutical companies don't feel that it's the maximum fair price but you're making them say it so with respect to the license plate example i mean there's nothing more public than driving around with two license plates on the front and back of your car with this motto on here again this agreement would not be public but for this litigation uh and i do think that your colloquy with my friend really illustrated the uh the issue here i mean they objected to your hypothetical that there could be an entirely private contract um and and that they would object to this sort of gives the game away this is not about what the contract says they they and their same with their uh insistence that if that phrase cannot be severed from the or that phrase should not be severed from the contract but rather the whole statute should fall as unconstitutional i mean that's what they're going after it's all right but what if we don't give them that what if but what if we agree with them there's a first amendment violation and the remedy is to strike the phrase from the contracts does does that do any harm to the pro does the program collapse does the program not go forward i i do think that it would have very far-reaching consequences to hold that a signature on such a contract constitutes uh speech implicating the first amendment but even if we move but but i don't think judge hartman's question went to the signature i think he went to the keep everything but maybe strike the reference to maximum fair price or again in woolly it wasn't no license plate it was no live free or die i don't know if i if i got that yeah no i and i do understand that the remedy the intuition that the remedy could be confined here what i want to emphasize is that the reach of the court's opinion because would not be confined here because before you get to remedy you have to find that there's a violation so that means one you have to find that this signature is not conduct but it's speech this is something that's never been done before second you have to get to i'm not talking about the signature um i understand again before before you explain the parade of horribles that will ensue if we find a first amendment violation here tell me tell me uh if we do the thing that you don't us to do and we say there's a first amendment violation and then we do the thing that uh your friend on the other side doesn't want us to do and refuse to strike the whole scheme and we simply say that the agreement uh does not have to say maximum fair price i'm just curious about the practical ramifications for this program if we're doing that i'm asking i'm asking a practical question i understand your honor and i think that uh your intuition that the program itself would not fall to pieces is correct i do think that the um equitable remedies inherent in contract reformation would be better addressed by the district court in the first instance um but if i so i i think if if that answers your question about the specific remedy i do want to emphasize that before you get to the intuitive appeal of a small remedy you have to find that there's a first violation even after you move past the conduct and speech distinction here i want to point out that there are two theories that they offer for first amendment violations one is the compelled speech theory and this court has made clear that there's no compelled speech in the absence of actual compulsion so we're right and that keeps getting us back to the exit because if if if there were no exit penalty in this statute then it's hard for them to argue that they're being compelled to say something in a form contract that says anything when it's their choice to do business with the government and they can just turn their backs and walk away and say we're not doing business with the government that's right your honor and i understand your point that the statute provides for this 11 to 23 month termination period when a manufacturer says we want to withdraw that's what the statute says yes but what the statute also says is that cms may terminate a contract for good cause and good cause is a capacious concept that accounts for circumstances that are not spelled out in very capacious but it it's it's it's a strong argument to say suggest that it's capacious enough to render nugatory every other word in the statute it would not do so your honor cms would not permit a 30-day uh withdrawal from medicare medicaid unless for for other reasons there you know all all sorts of reasons that a manufacturer may choose to withdraw and and if they do so they must follow the ordinary provisions in the statute that you laid out cms has said that your constitutional objections to this program we will determine that that is good cause for you to withdraw from the statute that is a reasonable interpretation of the statutory phrase good cause it does not render a nugatory or does not render surplus right so that's interesting let me make sure i understand what you're saying you're saying that that the good cause requirement can modify the 11 to 23 month provision in the statute because cms has made a good faith determination that the 11 to 23 month exit horizon presents constitutional problems in the statute no your honor cms does not consider that to be a constitutional problem i was uh uh explaining that cms considers plaintiffs constitutional objections to be sufficient for cms to invoke this good cause option so cms does not believe all right but that that is really interesting and gives me pause because if any time a litigant raises a constitutional challenge to a statute that that empowered an administrative agency to act in derogation of the statute for prudential reasons that that seems to really cause statutes to evaporate no no not at all your honor this i mean the the ability for cms to terminate an agreement for for example manufacturer misconduct is one sort of category of reasons but then good cause addresses all any other circumstance and here cms has explained in its guidance that it would permit withdrawal within 30 days if the manufacturer does so for this reason that does not negate the ability of the manufacturer to raise any other reason and withdraw from the program if they so choose and then they follow those other provisions so this reason and this reason alone is a 30-day exit and every other reason is is the 11 to 23 month exit yes there's no inconsistency between those two provisions and i uh so but the 11 to 23 months is is by statute the cms doesn't have to be involved they don't get to stay gay or nay that is that is an entitlement to get out in 11 to 23 months that's right cms only gets involved if someone is seeking a shorter exit period uh that's right with respect to this particular program and what are what are the parameters under which a party would be entitled to the 30-day earlier exit so the uh party what are the rules of the road to be entitled to that 30-day withdrawal the party needs to give notice to cms of its intention to do so um because of of its objection to the negotiation program provisions the statute itself has this 30-day window which is why it's no shorter than 30 days uh and that notice automatically from cms's perspective would start that 30-day window and then at the conclusion they would be able to get out so when you say the good cause is the plaintiff's constitutional objection which plaintiffs are you talking about in which constitutional objection so the the in the revised guidance cms has i was excuse me i was speaking more colloquially but in the revised guidance cms did explain that if they want to do so because of their objections to the negotiation cite that provision for um i it is on page i think 56 of our brief um and revise ja394 um and uh and ja384 described you know what section of the guidance i have the guidance document revised guidance pages 131 and 121 so you know we we started your portion of this argument talking about this plaintiff's eighth amendment claim which you think is a very clear loser uh so if if a plaintiff came to you with only an eighth amendment claim that aligns with the one that was pleaded in this complaint would that be a good cause uh so yes sir and i did not impose i intend to impose additional restrictions in the in the guidance cms is clear that if plaintiffs object to the negotiation program and that's why they want to uh get out of the program that that that itself i i apologize for saying that it had to be for a specific constitutional reason that's just the the underlying theme uh motivating many of you all they have to do is ask all you have to do is ask i mean i mean that seems like the exception swallows the rule right no no your honor because if you want to do so for other reasons then you have to follow the but you just say this reason yet cms i mean you see like you may have other reasons but you'd be a fool not to say oh and we think it's unconstitutional you would also be lying your honor if it were if you were just to invoke this reason if this were not your real reason and cms recognizes that this is a change in the medicare program and as uh you judge hardeman also recognize the ability to uh to get out based on your understanding of different terms that the choice was recognized by the agency if i could very briefly uh address the second type of excuse me first amendment theory they raise in addition to compelled speech is the unconstitutional conditions theory those are truly the only two first amendment theories that would ever be in play if that signature and the whole agreement were understood to be speech first compelled speech second unconstitutional conditions and if you're in that second world you are in the world and the legal framework that the supreme court set out in rust and in rust the court said that the speech within the confines of the government program are not court has broad latitude to set restrictions on that kind of speech and significantly less outside of the scope of the government program so in rust for example the recipients of uh family planning clinic recipients of government funding could not counsel their patients on the availability of abortion that implicates matters serious first amendment concerns and matters of public concern far greater than maximum fair price and the supreme court found no first amendment problem there even though the physicians in those clinics if their patients asked about options for an abortion were told to say this project does not consider abortion an appropriate method of family planning that is uh that is clearly speech unlike the situation here and it clearly implicates important matters of public concern also far greater of far greater significance than the ones here and the supreme court said that was not a problem because those clinics could have affiliated clinics set up and could offer those options there so those are the two theories compelled speech with this which this court has made clear does not apply in the absence of uh actual compulsion and unconstitutional conditions in which case you're in the rest framework and none of those neither of those would be successful even if this court were to take the extraordinary step of determining this to be speech and not conduct if there are no further questions we ask this court to affirm all right thank you very much miss patty we'll hear rebuttal thank you your honor i'd like to start with the williams packing exception since we didn't get a chance to get to it and i do think this you know this is the i think the quintessential situation where this exception would apply this is a 93 billion dollar penalty for a completely innocent act so the question is are we certain to prevail on the merits and the you know is it a fine the supreme court described it in austin a civil sanction that cannot fairly be said solely to serve remedial purpose but can be explained as either serving a retributive or deterrent purpose is a fine no one doubts that this is serves a deterrent purpose so it's a fine is it proportionate there's no serious argument that it is disproportionate the only thing as far as i can see the only argument they've given on the merits here is this argument that the supreme court itself squarely rejected in austin which is that there is there has to be some connection to a criminal proceeding and this is what the supreme court said in austin yeah it's it can be civil austin makes that clear exactly so what's the argument you've got it you've got to show that you're certain to succeed on the merits also under williams packing don't you yeah well they have no arguments of course we're certain to succeed in the merits i mean their arguments are you know there's there's no question that's a fine there's no questions disproportionate so their only remaining argument is that you know the exact one that was reacted in austin i mean i genuinely if you look through that brief i cannot imagine a more thin set of merits arguments on the on the question of whether i mean the promise is just a novel question and so how can we have on such a novel question right you need certainty for prong one and we don't have any we don't have any certainty at least in the case law oh i i think think to me novel when they are egregiously and novel yeah exactly when someone goes way beyond the bounds of their authority that's novel no one's ever tried it before because it's outrageous we don't even know if this is a fine this is a tax well no no it's it's it's that's not an issue for purposes of the constitutional claim that's what nfib says the the con congress gets to say for the purpose of the aaa correct nfib says that we don't have to accept congress's representation exactly but it's still a debatable proposition as to whether i i don't think is it a debatable proposition when the congressional budget office calls it as zero revenue raised and when any common sense look at it recognizes that 93 billion dollars for simply saying i don't want to negotiate with you completely under any reasonable interpretation innocent conduct is not a tax it can never raise revenue because no one is going to say well i don't want to negotiate i'm going to pay 93.1 billion dollars we introduced evidence in the district court uh j 88 to 98 saying we couldn't pay it it would be you know enterprise destroying to pay that kind of fine it's multiples of our national you know uh of our earnings so there is there is absolutely no way anyone could pay it congress knew that congress said it at such an absurdly high level because they knew no one could pay it that was the goal let me get back to this kind of austin in criminal activity i mean i mean how about other courts tied the excessive fines clause to criminal activity i mean first circuit case united states v todd i mean right todd is the only example that's even close and you know talk is way out on a limb as justice gorsuch's uh yeah i mean maybe but but but i mean at one level you need certainty and if you were in the first circuit you wouldn't have had that certainty so now that you're in the third circuit you do have the certainty yeah i mean it certainly feels more more universal to me than i i i guess i don't think sarah and i think you you know you can have a novel question you can look at it's it's novel because it's so egregious no one has ever tried to do it before so i think novelty doesn't help the fact that you have taught i novelty in the first circuit so we got novelty in the first circuit and then i'm supposed to have certainty i i yeah i may like your argument but certainty is certainty is not likelihood of success on the merits it's it's upstairs i mean i think if you think that there is no serious argument on the side then we're certain to prevail on the merits in this court so that you know and if you and if you have to sort of predict what would the supreme court think about talk well every other circuit that has considered this question including the four circuits on the fcpa uh on the fca including the ninth circuit on including the dates again every single circuit that has looked at this question has has said this you know look read austin read the words of austin austin unequivocally rejects this and that is their only argument on the merit so i do think we win on the certainty of success factor williams packing says it has to be apparent that under the most liberal view of the law and the facts novartis would win correct your honor i mean and so what do we call what the first circuit did wrong egregiously and you see it all the time you're in a way where a case goes to the supreme court egregiously wrong okay it's a you see all the time i mean i you know i practice supreme court you know you see it all the time where a case goes up there and it's like there's a circuit split one case is just unreasonable because the the standard the supreme court gives us is kind of like take the take everybody else's temperature on this too and so for taking everybody else's temperature the first circuit comes in hot i i think that the standard the supreme court gives you is to look at whether there are serious arguments the other side and whether you have an outlier court that makes a mistake on that i don't think is dispositive of your ability to look at the merits and decide that there are no serious arguments on the other side it just seems close to the qualified immunity standard you almost need a case on point and and you don't remotely have a case on point because even austin didn't hold that the excessive fines clause applies and so okay it it gestured toward that it dicta and it it talks about punishment it has to be punishment and it's unclear whether this is punishment i think this is a cudgel to to bring the companies to heal it seems more like that than punishment to me well and and the and the reason i don't think it's punishment is because as you point out um it was scored as zero they don't expect anyone to ever pay it so it's it's a deterrent it's it's the ultimate deterrent right and and deterrent is one of the things that's what austin says deterrent means it's a fine a fine can be deterrent and so if it's that then it meets the the criteria for fine but i feel like one way or another you know you have the aia and the aia says look at the purpose of the suit and you have williams packing and what in some ways both looking at is if congress just labels something which is clearly not a tax a tax for and the only reason you would ever there's in no sense as you said was this aimed to raise revenue it's called attacks because it's trying to invoke the aia because it's trying to shield it from judicial review and that kind of abusive use of the aia has to be some limit one way or another and one way of looking at it is you look at the object of the lawsuit here we don't seek an injunction against the tax we only seek an injunction against the coercion and when you know this is not a tax that's ever going to be paid regardless of the lawsuit so it cannot be by definition a lawsuit with the purpose of restraining tax collection case after case has said the purpose of the statute is to protect the government's consistent source of revenue is not meant to apply to a situation where the government is not trying to earn revenue at all and so that's one way one path through it or another path through it just square that with nfib can you just square that with nfib and nfib says that where the congress calls it a tax that's dispositive as to whether it is labeled tax but the aia does not say anything labeled attacks is sub is is barred from judicial review what the aia says is you look to the object of the lawsuit the purpose of the then you know absolutely that it's bought so if you have something which is so i i asked your friend on the other side about this you didn't sue treasury didn't sue irs and so if you would have sued treasury and irs then the purpose of your lawsuit might steer you into that trouble but if you don't sue them haven't you purchased for yourself an article three standing problem no because because we can still get the relief that we seek in our complaint at paragraph 123 which is because we can join them under rule 21 is that your argument no big because i mean that's one of our arguments if you if you think that's a problem but in response to judge phipps uh question of have we purchased a redressability problem no because the thing which we seek is in 123 of the complaint which is an injunction against the defendant cms from forcing nevada's to sign an initial manufacture agreement or to agree to prices set by the program so the thing we're saying is we don't want to be you know you you cannot make us agree you cannot make us sign this agreement that's the thing that we are asking for and so that injury is redressable regardless of whether irs are joined the the point that the government is making i think is the same one they tried to make in cic services which is well the downstream consequence of uh giving you your relief is that we won't be able to let the attacks that's exactly what they said in cic they said you're asking for and there it was an injunction against the enforcement of the reporting requirement and they said well that's enforced by a tax so what you're really asking for is an injunction against the tax and the supreme court said you look to the relief requested in the complaint if the complaint is not targeted at the tax then it's not a suit for the purpose of restraining attack assessment of attacks and that was a tax that could at least theoretically be collected here we have a tax that in no possible world will ever be collected it is unrealistic any application of common sense would recognize that there is no way that a single dollar is going to be collected as a result of this tax and yet they have they use a statute which you know dozens of cases say the sole and singular purpose for over 150 years has been to protect the government's ability to collect a consistent stream of revenue so it's a really abusive use of that statute your honor and there has to be one way or another either it's text or it's packing some way to prevent this kind of use of it thank you all right thank you to all council for the excellent arguments the court will take that case as well under advisement